**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------- X

PAULA LISBOA and CARLOS           :
GONZALEZ CALDERON, Individually   :
And on Behalf of All Others Similarly :
Situated,                          :
                                   :    14 Civ. 8115 (VSB) (RWL)
                    Plaintiffs,    :
                                   :    **[PROPOSED] JOINT <u>PRETRIAL</u>**
        -against-                  :    **<u>ORDER</u>**
                                   :
JOCELY PADILHA, JONICE PADILHA,    :
MAGDALY SANTOS, and                :
J SISTERS 57, INC.,                :
                                   :
                    Defendants.    :
----------------------------------------------- X

Pursuant to this Court's Individual Rule 6(A), the Parties submit this proposed

Joint Pretrial Order:

**i.      The full caption of the action:**

The full caption is above.

Note that the named Plaintiffs did not pursue the class / collective actions, and

that the trial will be on behalf of only the named Plaintiffs Paula Lisboa and Carlos

Gonzalez Calderon.

The schedule trial is only with respect to Defendant Magdaly Santos, and not the

other Defendants. Plaintiffs obtained a default judgment against Defendant J. Sisters

57, Inc. Dkt. No. 118. Jocely Padilha and Jonice Padilha filed actions in bankruptcy

court.

**ii.     The names, law firms, business addresses, and telephone and fax numbers of trial counsel:**

The names, law firms, business addresses, and telephone and fax numbers of trial counsel are in the signature lines at the bottom of this document.

**iii.     A brief statement by the plaintiffs as to the basis of subject matter jurisdiction, and a brief statement by each other party as to the presence or absence of subject matter jurisdiction. Such statements shall include citations to all statutes relied on and relevant facts as to citizenship and jurisdictional amount:**

This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1367(a), because these claims are so closely related to Plaintiffs' federal law wage and hour, discrimination and retaliation claims that they form part of the same case or controversy under Article III of the United States Constitution.

<u>**Defendant's Statement on Jurisdiction**</u>:

This Court lacks subject matter jurisdiction over this matter.  First, there is no diversity jurisdiction because one of the Plaintiffs reside in New York, where Defendant also resides. And, although Plaintiffs premise jurisdiction on 28 U.S.C. § 1331 and 1367(a), those statutes are unavailing.  New York Labor Law provides all the remedies Plaintiffs seeks against Defendant, and therefore, section 1331 does not apply. *See, e.g., Jing Sung v. Wasserstein*, 415 F. Supp. 2d 393, 402 (S.D.N.Y. 2006) (declining to exercise jurisdiction and holding that the plaintiffs' claims did not present a substantial federal question).  In addition, section 1367(a) does not apply because, as stated, there is no federal jurisdiction.

iv.     **A brief summary by each party of the claims and defenses that the party asserts remain to be tried, including citations to any statutes on which the party relies.**

Plaintiffs' Summary:

**Regarding Plaintiff Lisboa**

Defendant Magdaly Santos is Plaintiff Lisboa's employer as that term is defined by the FLSA and NYLL. Defendant Magdaly Santos is liable for Plaintiffs not being paid due wages owed to them under the Fair Labor Standards Act and the New York Labor Law, and for their not receiving wage notices sufficient to satisfy the requirements of the New York Wage Theft Prevention Act at any time during their employment. Santos is also liable for the retaliatory termination of Lisboa's employment after she complained.

Plaintiffs allege that Defendant Magdaly Santos controlled and managed operations at J. Sisters 57, Inc. ("J. Sisters"). She had the ability to recommend hiring and firing of employees. Defendant Santos was heavily involved in setting Plaintiffs' work schedules and acted as a gatekeeper for scheduling clients. In this capacity, Santos disciplined employees by among other things, closing employees' appointment books and preventing them from booking appointments and thereby earning commissions. Santos required employees to attend meetings at the salon. Defendant Santos was Plaintiffs' employer as that term is defined by the Fair Labor Standards Act and the New York Labor Law.

3

Lisboa worked at J. Sisters as a manicurist and waxer from May 2005 until her employment was terminated on March 7, 2014.

Lisboa began her employment with J. Sisters at West 57th Street as a manicurist, performing manicure and pedicure services. Later, J. Sisters promoted Lisboa to a waxer and she began performing waxing services in addition to manicure and pedicure services.

Lisboa never managed other employees and did not have the ability to hire or fire other employees.

Lisboa was compensated based on a percentage of the amount that the client paid for the service she performed (i.e., on a commission basis).

Lisboa also received tip monies from clients, however it was not uncommon for some tips to go missing when she received her paycheck, and Lisboa alleges Santos stole such tips.

Lisboa did not sign a commission agreement at any time during her employment.

Lisboa did not receive a wage notice sufficient to satisfy the requirements of the New York Wage Theft Prevention Act at any time during her employment.

Lisboa was not paid for idle time spent waiting for clients either at the salon, or when performing services outside the salon.

Lisboa paid for her own transportation costs when calling on clients outside of the salon.

4139-2427-8824, v. 1

When mandatory, after-hours meetings for employees were held, employees were not paid for time spent in these mandatory meetings and were threatened with "consequences" if they did not attend.

J. Sisters often offered its services to VIP clients, such as celebrities like Naomi Campbell, for deeply discounted prices or for free. Because Lisboa was paid on a commission basis, she, and other salon employees, would be paid less, or nothing at all, when performing services for these clients.

In addition, J. Sisters would "volunteer" employees to perform client services at a local assisted living center. Employees were not paid for this time.

Lisboa's pay stubs indicate that she was paid a "salary," but each paycheck contained a different amount of pay depending on how many and which types of services were performed. Lisboa's pay stubs do not document Lisboa's hours worked. On information and belief, Lisboa's hours worked were not recorded.

Lisboa worked approximately 50 hours each week and was not paid overtime wages. In addition, Lisboa often worked over 10 hours per day and was not paid a "split shift" wage.

Lisboa regularly worked over six hours per day and was often not allowed a half hour meal period.

Lisboa was provided no other breaks throughout the day.

J. Sisters required Lisboa to wear an all-white uniform similar to a nurse's scrubs as well as all-white shoes. Each day, Lisboa changed into her uniform at work and changed out of her uniform before leaving.

Lisboa purchased her own uniforms and laundered the uniforms herself.

Lisboa was required to purchase her own supplies, such as wax and a wax warmer appliance, which were necessary for her job.

Throughout her employment, Lisboa and others complained about pay practices. Employees were retaliated against for complaining.

For example, if a salon employee complained about having to perform a discount or free service, one form of retaliation would be closing the employee's appointment book, preventing the employee from scheduling any clients, for days or weeks at a time. This effectively prevented the employee from earning any compensation during the period in which the employee's book was closed.

On March 7, 2014, Lisboa complained to management that the sisters were funneling Lisboa's clients to their family members. She complained that the sisters were scheduling Lisboa for less lucrative manicure and pedicure services, and that she was earning less as a result. Lisboa's employment was terminated immediately after she made these complaints.

### Regarding Plaintiff Gonzalez Calderon

Defendant Magdaly Santos is Plaintiff Gonzalez Calderon's employer as that term is defined by the FLSA and NYLL.

Plaintiff Gonzalez Calderon worked at J. Sisters as a maintenance worker from 2003 until October 1, 2011.

Among other duties, Gonzalez Calderon performed maintenance and cleaning work for the salon. Gonzalez Calderon also ran errands for salon management, such as making bank deposits. Gonzalez Calderon opened and closed the salon each day. On Tuesday, Friday, and Saturday, Gonzalez Calderon worked from approximately 8:30 a.m. to 6:30 or 7:00 p.m. On Wednesdays and Thursdays, Gonzalez Calderon worked from approximately 7:00 a.m. to 8:30 or 8:45 p.m. During the last week of September, 2011, Gonzalez Calderon worked to renovate the salon's new location at 41 West 57th Street, New York, New York, 10019. During this week, Gonzalez Calderon worked from 7:00 a.m. to 10:00 or 11:00 p.m.

At no time during his employment was Gonzalez Calderon paid an overtime wage, despite the fact that Gonzalez Calderon worked approximately 17 hours of overtime each week, and 40 hours of overtime during the last week of September in 2011.

In addition, Gonzalez Calderon often worked over 10 hours per day and was not paid a "split shift" wage.

Gonzalez Calderon regularly worked over six hours per day and was often not allowed a half hour meal period.

Gonzalez Calderon was provided no other breaks throughout the day.

Gonzalez Calderon's pay stubs do not document his hours worked.

On information and belief, Gonzalez Calderon's hours worked were not recorded.

Gonzalez Calderon did not receive a wage notice sufficient to satisfy the requirements of the New York Wage Theft Prevention Act at any time during his employment.

**Defendant Santos's Summary**:

Defendant, Magaly Santos ("Ms. Santos"), was a receptionist for J Sisters, Inc. Ms. Santos had not decision-making authority whatsoever and did not have the ability to pay wages to anyone. Indeed, there are no allegations in the Plaintiffs' Second Amended Complaint or in Plaintiffs' statement of their case against Defendant. In addition, no case in New York or in this District has found a receptionist to be an employer under the New York Labor Law or under the Fair Labor Standards Act ("FLSA"). Defendant seeks her reasonable attorney fees and costs against Plaintiffs and against Plaintiffs attorney.

**v.     A statement as to the number of trial days needed and as to whether the case is to be tried with or without a jury:**

The Parties estimate three days are needed for trial. This case is to be tried with a jury.

Defendant believes the issue can be tried in one or two days.

**vi.    A statement as to whether all parties have consented to trial by a magistrate judge, without identifying which parties do or do not consent:**

The parties have not consent to The Honorable Robert W. Lehrburger trying this case.

**vii.   Any stipulations or agreed statements of fact or law to which all parties consent:**

8

None.

**viii.   A list of all trial witnesses, in the order in which the parties anticipate they will be called, indicating whether such witnesses will testify in person or by deposition, and a brief summary of the substance of each witness's testimony:**

Plaintiffs' witnesses:

Plaintiff Lisboa will testify first as to the matters regarding her and Plaintiff Gonzalez Calderon listed above in Subsection ii.

After Lisboa, Plaintiff Gonzalez Calderon will testify regarding the matters regarding himself listed above in Subsection ii.

After Plaintiff Gonzalez Calderon testifies, Plaintiff will call Defendant Santos to testify about her duties and her interactions with Plaintiff Lisboa and Plaintiff Gonzalez Calderon during and after their employment.

Defendant Santos's witnesses:

Defendant's Witness and Exhibit Lists are attached.

**ix.   A designation by each party of deposition testimony to be offered in its case in chief, and any counter-designations and objections by any other party:**

N / A.

Defendant is submitting her designation of deposition testimony, which is attached hereto as Exhibit B.

**x.   A list by each party of exhibits to be offered in its case in chief, with an indication by exhibit number as to whether any party objects to the exhibit. The party objecting must include a brief statement that makes clear the basis for its objection and must provide any necessary supporting authority.**

Plaintiffs' Exhibits:

| Exhibit No. | Description | Whether There Is Any Objection |
|---|---|---|
| 1 | paystubs issued to Lisboa during her employment with Defendants | Defendant objects as to the relevance of this Exhibit. |
| 2 | paystubs issued to Gonzalez Calderon during his employment with Defendants | Defendant objects as to the relevance of this Exhibit. |
| 3 | photograph of Lisboa in uniform while working for Defendants, bearing control number LISBOA ET AL 000249 | Defendant objects as to the relevance of this Exhibit. |
| 4 | copies of some receipts of purchases Lisboa made for supplies and also unfirm expenses copies of some receipts of purchases Lisboa made for supplies and also uniform expenses (Dkt. No. 152, Page 20 of 36 and Page 21 of 36) | Defendant objects as to the relevance of this Exhibit. |
| 5 | J Sisters 57, Inc.'s tax returns | Defendant objects as to the relevance of this Exhibit. |
| 6 | Lisboa's tax returns | Defendant objects as to the relevance of this Exhibit. |

xi.   **A statement of the damages claimed, and any other relief sought, including the manner and method used to calculate any claimed damages and a breakdown of the elements of such claimed damages.**

Plaintiffs' Statement Of Damages:

10

1.     **Lisboa's Damages Total $87,323.73, Before: Back-pay Damages; Liquidated Damages for The Back-pay Damages After Lisboa's Employment Was Unlawfully Terminated; Emotional Distress Damages; Front Pay; Any Attorneys' Fees And Costs; Interest; And Any Punitive Damages.**

Plaintiff Lisboa's damages under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") total: $87,323.73. These damages are broken down into these categories:

1.     unpaid overtime wages: $45,740.98;

2.     unpaid minimum wages: $1,280.00;

3.     unpaid spread of hours pay: $703.25;

4.     unreimbursed expenses, uniform purchases, and laundering: $675.41;

5.     penalties for failure to provide wage notice and statements: $5,000.00;

6.     back-pay damages after Lisboa's employment was unlawfully terminated in retaliation for her complaining: to be determined at trial;

7.     front pay in lieu of reinstatement: to be determined at trial;

8.     emotional distress damages: to be determined at trial;

9.     liquidated damages under the FLSA and NYLL: for the back-pay loss due to the unlawful retaliatory discharge, to be determined at trial,

11

and $33,924.09 under the NYLL for the back-pay loss while Lisboa was employed;

10.    punitive damages: to be determined at trial;

11.    prejudgment interest;

12.    post-judgment interest from the date of entry of final judgment; and

13.    attorneys' fees and costs to be determined after any verdict in favor of Plaintiffs Lisboa.

The above totals: $87,323.73, before: back-pay damages; liquidated damages for the back-pay loss due to the unlawful retaliatory discharge; emotional distress damages; front pay; any attorneys' fees and costs; interest; and any punitive damages.

### 1.1.    Lisboa Is Entitled To $45,740.98 In Unpaid Overtime Wages.

Lisboa is entitled to $45,740.98 in unpaid overtime wages.

Both the FLSA and New York law require employers to compensate each employee at a premium rate, based on the particular employee's "regular rate," for hours worked in excess of 40 per week. See 29 U.S.C. § 207(a)(1); N.Y. Comp. Codes R. & Regs. tit. 12, § 142–2.2.

To calculate overtime damages due to Lisboa, then, we must determine her "regular rate" of pay for the relevant periods. The regular rate is "the hourly rate actually paid the employee for the normal, non-overtime workweek for which he is

12

employed," <u>Walling v. Youngerman– Reynolds Hardwood Co.</u>, 325 U.S. 419, 424 (1945), and is calculated by "dividing the employee's weekly compensation by the number of hours for which that compensation is intended." <u>Moon v. Kwon</u>, 248 F.Supp.2d 201, 230 (S.D.N.Y. 2002); <u>see also</u> 29 C.F.R. § 778.109; 29 C.F.R. § 778.113(a). Here, Lisboa's average hours worked each week were conservatively 50.25—10.25 overtime hours. Lisboa Decl., ¶ 32.

Here, Lisboa's average hours worked each week were conservatively 50.25—10.25 overtime hours. During her employment this was Lisboa's usual schedule:

> Monday: off
>
> Tuesday: arrived at work at 8:15 a.m. – 5:30 p.m. or later (> ~9.25 hours)
>
> Wednesday: arrived at work at 8:15 a.m. – 7:30 p.m. or later (> ~11.25 hours) – eligible for spread of hours
>
> Thursday: arrived at work at 8:15 a.m. – 7:30 p.m. or later (> ~11.25 hours) – eligible for spread of hours
>
> Friday: arrived at work at 8:15 a.m. to 9:00 am – 5:30 or later (> ~9.25 hours)
>
> Saturday: arrived at work at 8:15 a.m. to 9:00 am – 5:30 or later (> ~9.25 hours)
>
> Sunday: off

Note that Lisboa often worked more than the above. For example, sometimes she would arrive at 7 a.m. for an important client.

Lisboa was not paid overtime wages. Instead, Lisboa was paid a percentage of what her clients paid for a service, despite making her wait hours for work to become

available for her. In addition to the commissions paid to Lisboa, she received tips from

customers.

This chart uses Lisboa's reported income from work and divides it by the hours

she worked each year to arrive at her hourly and overtime rate:

| Period Of Employment Within 6-Year NYLL Statute of Limitations [1] | Number Of Hours Worked | Number Of Total Weekly Hours / Number Of Overtime Hours Worked Per Week | Income From Work (Including Both "Commissions" And Tips From Clients) | Hourly Rate (Total Pay / Weeks Worked / Total Weekly Hours | Overtime Rate (1.5 X Hourly Rate, Or If Hourly Rate Was Below The NY Minimum Wage, Using 1.5 X The NY Minimum Wage Rate) | Total Overtime Pay Owed (Number Of Weeks Worked X Weekly Overtime Hours) |
|---|---|---|---|---|---|---|
| October 8, 2008 - December 31, 2008 | 591.75 [2] | 50.25 / 10.25 for weeks 1-7 and 9-11; | prorated amount for this period is $4,670.16 (2008 total | $7.89 | $11.84 | For weeks 1-7, and 9-11 = $1,213.60 |

---

[1] Plaintiffs filed the original complaint on October 8, 2014. Thus, Lisboa calculates her damages starting on October 8, 2008—6 years before. See Schwerdtfeger v. Demarchelier Mgmt., Inc., No. 10–CV–7557, 2011 WL 2207517, at *6 (S.D.N.Y. June 6, 2011) ("The notice adequately describes that there are claims under New York law and that these claims, unlike the FLSA claims, have a six-year statute of limitations.").

[2] Based on those days and hours she worked according to her schedule, and the Thanksgiving and Christmas holidays when J Sisters was closed, Lisboa worked 591.75 hours this period.

| | | | | | | |
|---|---|---|---|---|---|---|
| | | 39 / 0 for weeks 8 and 12, due to the Thanksgiving and Christmas Holidays when J Sisters was closed | W-2 income of $17,123.95 / 366 X 84 days)[3] | | | |
| January 1, 2009 - December 31, 2009 | 2,471.50[4] | 50.25 / 10.25 for weeks 1 – 47, 51; | $27,694.87 | $11.21 | $16.82 | For weeks 1-47, and 51 = 48 weeks |

[3] In 2008, Lisboa took approximately 4-8 weeks unpaid leave, in connection with the birth of her son on February 24, 2008. Lisboa Decl., n.1. Her total compensation for 2008 was $17,123.95. Using an average of 6 weeks for the 4-8 weeks for leave for her son, she only worked 44 weeks. Id. Thus her weekly income was $389.18. This amount times the 12 weeks for this period equals $4,670.16.

[4] Lisboa has no specific recollection of taking any vacation in 2009. For the purposes, however, of being conservative, she assumes here a vacation from November 29 to December 16, mirroring her 2013 vacation. See also Paparella Decl., Ex. A, Lisboa Dep. Tr.: 85:3- 9. Based on those days and hours she worked according to her schedule, and the Thanksgiving, Christmas, and New Year's Day holidays when J Sisters was closed, Lisboa worked 2,471.50 hours this period.

| | | | | | | |
|---|---|---|---|---|---|---|
| | | 18.5 / 0 for week 48; <br><br> 0 / 0 for weeks 49 and 50; and <br><br> 41 / 1 for week 52 (this is based on her work schedule and the Thanksgiving, Christmas, and New Year's Day | | | | X 10.25 X $16.82 = $8,275.11; 1 OT hour for week 52 = $16.82 No OT wages for weeks 48, 49, and 50 <br><br> TOTAL = $8,292.26 |

16

| | | holidays, and assuming a vacation from November 29 to December 16 (like she took in 2013 even though she does not specifically recall taking vacation this year) | | | | |
|---|---|---|---|---|---|---|
| January 1, 2010 - | 2,488[5] | 50.25 / 10.25 for | $16,598.18 | $6.67 (below | $10.88 | For weeks 1-46, 51 |

[5] This is based on Lisboa's work schedule, and a presumed vacation of November 29 - December 16 (like she took in 2013), although Lisboa has no specific recollection of taking any vacation in 2010). Lisboa worked 52 Tuesdays (at least 9.25 hours each Tuesday, for a total of 481 hours); 49 Wednesdays (at least 11.25 hours each Wednesday, for a total of 551.25 hours); 48 Thursdays (at least 11.25 hours each Thursday, for a total of 540 hours); 50 Fridays (at least 9.25 hours each day,

| | | | | | | |
|---|---|---|---|---|---|---|
| December 31, 2010 | | weeks 1-46, 51;<br><br>39 / 0 for week 47;<br><br>18.50 / 0 for week 48;<br><br>0 / 0 for weeks 49 and 50; 41 / 1 for week 52 | | applicable NY and federal $7.25 minimum wage) | | = 47 X 10.25 X 10.88 = $5,241.44<br><br>Plus<br><br>$10.88 for week 52.<br><br>TOTAL = $5,252.32 |
| January 1, 2011 - <br><br>December 31, 2011[6] | 2,371[7] | 50.25 / 10.25 for weeks 1 – 42, 49 - 52; 9.25 / 0 for week 43; 0 / 0 for weeks 44 – 47; 41 / 1 for week 48 | $20,717.46 | $8.74 | $13.11 | For weeks 1 - 42, 49 - 52 = 46 X 10.25 X $13.11 = $6,181.37<br><br>Plus |

for a total of 462.50 hours); and 49 Saturdays (at least 9.25 hours each Saturday, for a total of 453.25 hours).

[6] In 2011, from October 23 to November 26, Lisboa did not work. She trained to be a faster waxer. Id. After this training period, on November 27, she returned to J Sisters. Lisboa specifically recalls having not taken other time off in 2011.

[7] This is based on Lisboa's work schedule, and her time off training from October 23 to November 26. Lisboa worked 47 Tuesdays (at least 9.25 hours each Tuesday, for a total of 434.75 hours); 47 Wednesdays (at least 11.25 hours each Wednesday, for a total of 528.75 hours); 47 Thursdays (at least 11.25 hours each Thursday, for a total of 528.75 hours); 47 Fridays (at least 9.25 hours each day, for a total of 434.75 hours); and 48 Saturdays (at least 9.25 hours each Saturday, for a total of 444 hours).

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | | | $13.11 For week 48. TOTAL = $6,194.48 |
| January 1, 2012 - December 31, 2012 | 2,473.50[8] | 50.25 / 10.25 for weeks 1 - 47, 51; 20.5 / 0 for week 48; 0 / 0 for weeks 49-50; 41 / 1 for week 52 (there was an extra day this year, but it fell on a Monday when Lisboa is off and does not affect this analysis) | $36,176.59 | $14.63 | $21.95 | For weeks 1-47, 51 = 48 X 10.25 X 21.95 = $10,799.40 Plus $21.95 For week 52. TOTAL = $10,821.35 |

---

[8] This is based on Lisboa's work schedule, and a presumed vacation of November 29 - December 16 (like she took in 2013). Lisboa worked 49 Tuesdays (at least 9.25 hours each Tuesday, for a total of 453.25 hours); 50 Wednesdays (at least 11.25 hours each Wednesday, for a total of 562.50 hours); 49 Thursdays (at least 11.25 hours each Thursday, for a total of 551.25 hours); 49 Fridays (at least 9.25 hours each day, for a total of 453.25 hours); and 49 Saturdays (at least 9.25 hours each Saturday, for a total of 453.25 hours).

4139-2427-8824, v. 1

| | | | | | | |
|---|---|---|---|---|---|---|
| January 1, 2013 - December 31, 2013 | 2,480.75 [9] | 50.25 / 10.25 for weeks 1 - 47, 51; 20.5 / 0 for week 48; 0 / 0 for weeks 49–50; 39 / 0 for week 52 | $40,044.59 | $16.14 | $24.21 | For weeks 1-47, 51 = 48 X 10.25 X 24.21 = $11,911.32 |
| January 1, 2014 – March 7, 2014 | 470.15 [10] | 50.25 / 10.25 for weeks 1 - 9; 18.25 / 0 for week 10 | $6,991.93 | $14.86 | $22.29 | For weeks 1 – 9 = 9 X 10.25 X 22.29 = |

---

[9] This is based on Lisboa's work schedule, and a vacation she took from November 29 - December 16. Lisboa worked 51 Tuesdays (at least 9.25 hours each Tuesday, for a total of 471.75 hours); 49 Wednesdays (at least 11.25 hours each Wednesday, for a total of 551.25 hours); 49 Thursdays (at least 11.25 hours each Thursday, for a total of 551.25 hours); 49 Fridays (at least 9.25 hours each day, for a total of 453.25 hours); and 49 Saturdays (at least 9.25 hours each Saturday, for a total of 453.25 hours).

[10] This is based on Lisboa's work schedule. Lisboa worked 9 Tuesdays (at least 9.25 hours each Tuesday, for a total of 83.25 hours); 10 Wednesdays (at least 11.25 hours each Wednesday, for a total of 112.5 hours); 10 Thursdays (at least 11.25 hours each Thursday except the last one when she worked at least 7 hours, for a total of 108.25 hours); 9 Fridays (at least 9.25 hours each day, for a total of 83.25 hours); and 9 Saturdays (at least 9.25 hours each Saturday, for a total of 83.25 hours). Lisboa has properly not included any vacation time as she does not recall it, and the Court recognizes that her prior recalled vacation in 2013. Given her previous inclusion of vacation she does not recall, her failure to argue for times when she was made to attend unpaid meetings, and her failure to account for the times she arrived early and stayed late, it is reasonable not to presume any vacation time for this short period. Lisboa has also not included the time she spent on March 7 when she arrived at work and began to prepare for the day, but then learned she was fired. Nor is she including the time spent after 3-3:15 p.m. when she had to pack her things early on March 6, when her book was shut down early at approximately 3-3:15 p.m., because she complained. She was scheduled to work until 5 p.m. that day.

| | | | | | | $2,056.25 |
|---|---|---|---|---|---|---|
| | | | | | | **$45,740.98** |

### 1.2.    Lisboa Is Entitled To $1,280.00 In Unpaid Minimum Wages.

Lisboa is entitled to **$1,280.00** in unpaid minimum wages for the period January 1, 2010 – December 31, 2010, when she earned in total from "commissions" and tips $6.61 per hour (below the applicable NY and federal $7.25 applicable minimum wage). This number was arrived at by subtracting Lisboa's average hourly rate of $6.61 from $7.25, which equals $0.64, and multiplying that by the regular non-overtime hours Lisboa conservatively worked each week, 40, times 50 weeks, which equals $1,280. It does not account for the additional overtime hours, because those are accounted for in Section 1.1.

### 1.3    Lisboa Is Entitled To $703.25 In Spread Of Hour Wages.

Lisboa is entitled to $703.25 in spread of hour wages.

The New York regulations also required Lisboa to be paid "one hour's pay at the basic minimum hourly wage rate, in addition to the minimum wage required . . . for any day in which: (a) the spread of hours exceeds 10 hours[.]" N.Y. Comp. Codes R. & Regs.

21

tit. 12, § 142- 2.4. "Spread of hours" is "the interval between the beginning and end of an employee's workday. The spread of hours for any day includes working time plus time off for meals plus intervals off duty." Id. § 142-2.18.

From January 1, 2010 – December 31, 2010, when Lisboa's hourly average pay was less than the minimum wage, J Sisters owes her spread of hours pay. As Lisboa's schedule included above in Section 1.1 shows, two times a week, on Wednesday and Thursday, she worked > 11.25 hours each of those days. The Court notes the conservative calculation here, as Lisboa has testified that she often worked longer hours, but only here includes those days by virtue of her schedule she would have been entitled to spread of hours pay and does not argue for other days when she had to arrive early or stay late on the other days she worked.

From January 1, 2010 – December 31, 2010, there were collectively 97 Wednesdays and Thursdays Lisboa worked, when Thanksgiving and a vacation from November 29 to December 16 is incorporated (although Lisboa does not recall such a vacation). Multiplying 97 by the applicable minimum wage rate of $7.25, J Sisters owes Lisboa $703.25.

### 1.4.  Lisboa Is Entitled To $ 675.41 For Unreimbursed Expenses, Uniform Purchases, And Uniform Laundering.

Lisboa is entitled to $675.41 for unreimbursed expenses, uniform purchases, and uniform laundering.

22

Lisboa was required to purchase her own supplies, such as gloves, wax-warmer machines (one for on-site and one for off-site), baby oil, baby powder, A + D ointment, scissors, and beautician's needles, all of which were necessary for her job. She purchased a Satin Smooth Double Wax Warmer Kit in 2011 for $119.99 from Universal Companies, Inc. In 2013, she bought a smaller wax warmer kit for work offsite that cost her $69.99. These items are "tools of the trade." She also spent about $60.00 per year on uniforms and about $225.00 per year on laundering them. Lisboa is entitled to these expenses.

Lisboa was required to wear certain uniforms when she worked. She was required to wear an all-white uniform with white shoes. The uniform was not something one would wear outside of work. Lisboa left her uniform at work and changed into it when she arrived and out of it before leaving. Lisboa did not wear the uniform outside of work.

In addition to Lisboa having to buy the uniforms herself without reimbursement, she also paid for their laundering without reimbursement.

"The FLSA prohibits employers from requiring employees to purchase the tools of their trade . . . 'when the cost of such tools purchased by the employee cuts into the minimum or overtime wages required to be paid him under the Act.'" Jin M. Cao v. Wu Liang Ye Lexington Rest., Inc., 08 Civ. 3725, 2010 WL 4159391 at *4 (S.D.N.Y. Sept. 30, 2010) (Chin, D.J.) (quoting 29 C.F.R. § 531.3(d)(1)); see also 29 C.F.R. § 531.35 ("[I]f it is a requirement of the employer that the employee must provide tools of the trade which will be used in or are specifically required for the performance of the

23

employer's particular work, there would be a violation of the [FLSA] in any workweek when the cost of such tools purchased by the employee cuts into the minimum or overtime wages required to be paid him under the" FLSA.). Likewise, under New York law, "[i]f an employee must spend money to carry out duties assigned by his or her employer, those expenses must not bring the employee's wage below the required minimum wage." 12 N.Y.C.R.R. § 146–2.7.

Both New York law and federal law require employers to compensate employees for the purchase and maintenance of required uniforms if the employees' expenditures for these purposes would reduce their wages to below minimum wage. Ayres v. 127 Restaurant Corp., 12 F.Supp.2d 305, 310 (S.D.N.Y. 1998).

Here, for 2010, when Lisboa's average hourly wages fell short of the minimum wage, Lisboa is owed $675.41, which is what Lisboa spent on expenses that year, plus uniforms and uniform laundering.

### 1.5.   Pursuant to NYLL Sections 195(1) And 195(3), Lisboa Is Entitled To $5,000.00 For The Failure To Provide Her The Required Wage Notices And Statements.

Pursuant to NYLL Sections 195(1) and 195(3), Lisboa is entitled to $5,000.00 for the failure to provide the required wage notices and statements.

Lisboa was never provided the notice and statements required by New York's Wage Theft Prevention Act ("WTPA"), which is the name of an amendment to the NYLL, effective on April 9, 2011. From "April 9, 2011 and prior to December 29, 2014, the

WTPA required employers, in addition to the wage notice at time of hiring, to provide wage notices "on or before February first of each subsequent year of the employee's employment with the employer." Xochimitl v. Pita Grill of Hell's Kitchen, Inc., 14-CV-10234 (JGK) (JLC) 2016 WL 4704917, *13 (S.D.N.Y. 2016), citing N.Y. Lab. Law § 195 (1)(a) (eff. April 9, 2011 to Dec. 28, 2014). Even though this is no longer a requirement, Lisboa is still owed for the period the law was in effect. Id. at n. 9 (noting "Following December 29, 2014 the WTPA was amended such that the annual February notice is no longer required. N.Y. Lab. Law § 195(1)(a)," but still awarding the penalty for the time the law was in effect.)

This wage notice was required upon hiring, which is inapplicable to Lisboa as she was hired before this law, but also "annually on or before the first of February," Inclan v. New York Hospitality Group, Inc., 95 F.Supp.3d 490, 501 (S.D.N.Y. March 26, 2015 S.D.N.Y), which does apply to Lisboa. Lisboa was never provided this notice.

"Prior to February 27, 2015, the WTPA allowed employees to recover, as statutory damages for violations of this wage notice requirement, $50 per work week, not to exceed $2,500." Inclan, 95 F.Supp.3d at 501, citing 2010 N.Y. Laws ch. 564 § 7, amending N.Y. Labor Law § 198(1–b). 19 Thus, Lisboa is owed $2,500.00 for the wage notice failure.

Separately, NYLL Section 195(3), known as the Wage Theft Prevention Act ("WTPA"), "obligates an employer to furnish each employee with a statement with every payment of wages, listing information about the rate and basis of pay, any

allowances and deductions, and the employer's identity and contact details." <u>Franco v.
Jubilee First Ave. Corp.</u>, No. 14–CV–7729, 2016 WL 4487788, at *14, 2016 U.S. Dist.
LEXIS 114191, at *43 (S.D.N.Y. Aug. 25, 2016) (citation omitted). The statements
Lisboa was provided did not include all the required information. The statements to
Lisboa said she was paid on a salary basis. (Lisboa Decl., ¶ 12; see also, e.g., Lisboa Ex.
A.)

"Prior to February 27, 2015, the WTPA allowed employees to recover, as
statutory damages for violations of this wage statement requirement, $100 per work
week, not to exceed $2,500." Inclan, 95 F.Supp.3d at 502, citing 2010 N.Y. Laws ch.
564 § 7, amending N.Y. Labor Law § 198(1–d). Thus Lisboa is owed $2,500.00 for this
failure.

Combining the wage notice and statement failures, Lisboa is owed $5,000.00.

### 1.6.   Pursuant to the NYLL, Lisboa Is Owed For The Back-Pay Loss She Suffered As A Result Of The Unlawful Retaliatory Termination Of Her Employment.

Lisboa brought a retaliation claim under the NYLL. Dkt. No. 19, p. 18 (ELEVENTH
CLAIM).[11]

The last full year Lisboa worked at J Sisters was 2013. Lisboa earned $40,044.00
that year.

---

[11] Lisboa also brought a retaliation claim under the FLSA (Dkt No. 19 (TENTH CLAIM). <u>See</u>
<u>Greathouse v. JHS Sec. Inc.</u>, 784 F.3d 105 (2d. Cir. April 20, 2015).

Using that number, in 2014, for work performed Lisboa earned $8,724.00, for a loss of $31,320.00.

In 2015, instead of $40,044.00, Lisboa earned $15,596.00, for a loss of $24,448.00.

In 2016, Lisboa's earned $28,121.00, for a loss of $11,923.00.

In 2017, Lisboa's income was $13,341.00, for a loss of $26,703.00.

In 2018, for work through May 13, 2018, Lisboa's income was $3,282.77. Prorating her last income at J Sisters for a full year of $40,044.00 to this May 13 date, her daily rate of income at J Sisters was $109.71. Multiplying this rate of $109.71 times how many days there were in 2018 until May 13—132—Lisboa would have earned $14,481.72 at J Sisters, for a back-pay loss of $11,198.95.

Totaling the above, Lisboa has suffered back-pay losses of $105,592.95 through May 13, 2018. These back-pay damages continued after May 13, 2018 until the present, and presumably through to the trial of this matter. The same calculation method shall be used to calculate the back-pay damages after May 13, 2018.

### 1.7. Pursuant to the FLSA And NYLL, Lisboa Is Entitled To Reinstatement Or Front Pay In Lieu Of Reinstatement.

Pursuant to the NYLL, Lisboa is entitled to reinstatement or front pay in lieu of reinstatement. NYLL, § 215(2)(a). As reinstatement is not an option here, the Court should award Lisboa front pay.

Lisboa is currently 40 and expects to work until she is 65—another 25 years. To calculate this amount, Lisboa will take her 2019 income and compare it to her last full year of income at J Sisters of $40,044.00 in 2013 and multiply it by 25 years.

### 1.8.  Pursuant to the NYLL, Lisboa Is Entitled To Emotional Distress Damages.

Pursuant to the NYLL Lisboa is entitled to emotional distress damages.

Belizaire v. RAV Investigative and Sec. Services Ltd., 61 F.Supp.3d 336, 363-364 (S.D.N.Y. 2014), noted "The NYLL does not specifically list emotional distress damages as a remedy available for unlawful retaliation, but it does authorize granting of 'all appropriate relief,'" (citing N.Y. Lab. L. § 215(2)(a)), "and courts have found emotional distress damages to be an appropriate award." 61 F.Supp.3d at 366, citing Perez v. Jasper Trading, Inc., No. 05cv1725 (ILG) (VVP), 2007 WL 4441062, at *7–10 (E.D.N.Y. Dec. 17, 2007).

The termination of Lisboa's employment was not the end of the retaliation. Following its termination of Lisboa, J Sisters with Defendant Santos objected to her receiving unemployment benefits, and argued she could not become employed at another salon due to what they argued was a valid non-compete—again trying to deprive her of a livelihood.

Here, Lisboa seeks damages for her "emotional distress." Amended Complaint, ¶ 115. Plaintiff suffered from severe stress. She, a single mother, was worried and remains worried about providing for her son, due to her substantially lesser income

4139-2427-8824, v. 1

following the retaliatory discharge. Her anger at the way she was treat after years of loyal employment continues today. Plaintiff also had medical treatment in connection with her emotional distress claim.

Plaintiff's evidence certainly supports at the very least an award of damages for "garden variety" emotional distress. See Reiter v. Metro. Transp. Auth. of New York, No. 01cv2762 (JGK), 2003 WL 22271223, at *8–9 & n.4 (S.D.N.Y. Sept. 30, 2003).

Lisboa's evidence of emotional distress actually rises above the garden variety category which is "based primarily on the plaintiffs' description of mental anguish in somewhat general terms, [where] there is little or no evidence of medical treatment, and [where] there is little detail of the duration, severity, or consequences of the condition." Id. While "the award in a particular case must be seen in light of the facts and circumstances of that case," Port Auth. Police Asian Jade Soc. of New York & New Jersey Inc. v. Port Auth. of New York & New Jersey, 681 F.Supp.2d 456, 469 (S.D.N.Y. 2010), courts in the Second Circuit have noted that garden-variety emotional distress claims generally range between $30,000 and $100,000. See id.; see also Olsen v. County of Nassau, 615 F.Supp.2d 35, 46 (E.D.N.Y. 2009) ("Garden variety emotional distress claims generally merit $30,000 to $125,000 awards." (citation omitted)); Abel v. Town Sports Int'l, LLC, No. 09cv10388 (DF), 2012 WL 6720919, at *16 (S.D.N.Y. 2012) (collecting authority).

### 1.9.   Lisboa Is Entitled to Liquidated Damages.

29

Lisboa is entitled to liquidated damages. These liquidated damages are comprised of two categories: (1) those associated with the retaliatory discharge; and (2) those associated with the unpaid wages while Lisboa was employed.

### 1.9.1. Lisboa Is Entitled To Liquidated Damages In The Amount Of Her Back Pay Loss Suffered Because Of The Unlawful Retaliatory Discharge.

Under both the FLSA and the NYLL, Lisboa is entitled to liquidated damages of because of the retaliatory discharge. These liquidated damages should equal the amount of her determined back–pay loss which will presumably continue until trial.

### 1.9.2. Lisboa Is Entitled To Liquidated Damages In The Amount Of $33,924.09—The Amount Of Her Unpaid Wages During Her Employment With J Sisters.

Regarding Lisboa's unpaid wages for the time she was employed, she is entitled to liquidated damages of **$33,924.09.** This chart shows the break down, and incorporates the NYLL change in liquidated damages from 25% to 100% on April 9, 2011:

| Back–Pay Damages | 25% Rate Pre–April 9, 2011 | 100% Rate Post-April 9, 2011 | Total |
|---|---|---|---|
| Unpaid Minimum Wages | 2010:  $1,280,00 X  0.25 =  $320.00 | N / A | $320.00 |

| | | | |
|---|---|---|---|
| Unpaid Overtime Wages | 2008:<br><br>$1,213.60 X<br><br>0.25 =<br><br>$303.40 | Year 2011<br><br>(post–April 9,<br><br>2011) =<br><br>$4,313.19[12] | $33,259.43 |
| | 2009:<br><br>$8,292.26 X<br><br>0.25 =<br><br>$2,070.57 | 2012 =<br><br>$10,821.35 | |
| | 2010:<br><br>$5,252.32 X<br><br>0.25 =<br><br>$1,313.08 | 2013 =<br><br>$11,911.32 | |
| | Year 2011<br><br>(pre–April 9,<br><br>2011) =<br><br>$1,881.29 X | 2014 =<br><br>$2,056.25 | |

---

[12] In 2011, for weeks 15 – 42, 49 – 52 (32 weeks in total), Lisboa worked at least 50.25 hours according to her schedule. Of these 50.25 hours, 10.25 hours were hours for which J Sisters should have paid Lisboa the overtime premium rate. Multiplying 10.25 by $13.11 by 32 equals $4,300.08. In week 48, she worked one overtime hour for a value of $13.11, making the total $4,313.19.

4139-2427-8824, v. 1

| | 0.25 = $470.32[13] | | |
|---|---|---|---|
| | Total = $4,157.37 | Total = $29,102.11 | |
| Spread-Of-Hours Pay | 2010: $703.25      X 0.25             = $175.81 | N / A | $175.81 |
| Uniform Purchases And Laundering | 2010: $675.41      X 0.25             = $168.85 | N / A | $168.85 |
| | | | **$33,924.09** |

Thus, the total liquidated damages the back-pay loss while Lisboa was employed

is $33,924.09.

### 1.10. Lisboa Is Entitled To Punitive Damages For The Retaliatory Termination.

---

[13] For weeks 1 – 14 of 2011, Lisboa worked full weeks, at least 50.25 hours each week according to her schedule. See Lisboa Decl., ¶¶ 21, 34, 36. Of these 50.25 hours, 10.25 hours were hours J Sisters should have paid her the overtime premium rate of $13.11. Multiplying 10.25 by $13.11 by 14 weeks equals $1,881.29.

Lisboa is entitled to punitive damages for the retaliatory termination. This amount is double of her back-pay losses and the liquidated damages. See Sines v. Serv. Corp. Int'l, No. 03 Civ. 5465 (SC), 2006 WL 3247663 (S.D.N.Y. 2006) (allowing punitive damages award for FLSA retaliation claim at this rate).

### 1.11.  Pursuant to the NYLL, Lisboa Is Owed Prejudgment Interest.

Lisboa is entitled to prejudgment interest on this amount at a rate of 9% per annum. Belizaire v. RAV Investigative and Sec. Services Ltd., 61 F.Supp.3d 336, 363-364 (S.D.N.Y. November 21, 2014). New York law permits interest on damages incurred over a period of time to be calculated from "the date [damages were] incurred or upon all of the damages from a single reasonable intermediate date." C.P.L.R. § 5001(b). This prejudgment interest accrues until "the date the verdict was rendered," and is then "included in the total sum awarded." Id. § 5001(c). Interest then continues to accrue on the "total sum awarded, including interest to verdict, report, or decision, ... to the date of entry of final judgment." Id. § 5002.

Belizaire used the intermediate date method. 61 F.Supp.3d at 364. Here, to use that method, the relevant dates are the first date upon which Lisboa may recover which is October 8, 2008, six years before she filed the complaint, and the entry of judgment. See Maldonado v. La Nueva Rampa, Inc., No. 10cv8195 (LLS)(JLC), 2012 WL 1669341, at *11 (S.D.N.Y. May 14, 2012) (recommending that interest be calculated from

midpoint of employment period where NYLL violations occurred throughout the course of employment).

### 1.12.   Lisboa Is Entitled To Post-Judgment Interest.

Lisboa seeks post-judgment interest in the Second Amended Complaint. Dkt. No. 19, Prayer For Relief, p. 19, g. Section 1961(a) states that "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a). Furthermore, "interest shall be calculated from the date of the entry of judgment at [the federal] rate equal to the weekly average 1–year constant maturity Treasury yield . . . for the calendar week preceding the date of judgment." 28 U.S.C. § 196(a).

The Second Circuit has held that an award of post-judgment interest is "mandatory" and should be awarded at the statutory rate prescribed by section 1961. <u>Scipani v. McLeod</u>, 541 F. 158, 165 (2d Cir. 2008) (citing <u>Westinghouse Credit Corp. v. D'Urso</u>, 371 F.3d 96, 100 (2d Cir. 2004)).

### 1.13.   Attorneys' Fees And Costs Should Be Awarded.

In Lisboa prevails at trial, attorneys' fees and costs should be awarded under the FLSA, 29 U.S.C. § 216(b), and NYLL § 198. <u>See, e.g.</u>, <u>Guardado v. Precision Fin., Inc.</u>, No. 04-CV-3309 (JS) (AKT), 2008 WL 822105, at *2 (E.D.N.Y. Mar. 25, 2008).

### 2.      Gonzalez Calderon's Damages Total $120,011.46.

Plaintiff Gonzalez Calderon's damages under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") total: **$120,011.46**. These damages are broken down into these categories:

1.   unpaid overtime wages: $56,291.93;

2.   penalties for failure to provide wage notice and statements: $5,000.00;

3.   emotional distress damages to be determined at a hearing;

4.   liquidated damages under the NYLL: $20,722.48;

5.   prejudgment interest: $37,997.05;

6.   post-judgment interest; and

7.   attorneys' fees and costs to be determined after any verdict in favor of Plaintiffs Gonzalez Calderon.

The above totals: $120,011.46.

### 2.1.   Calderon Is Entitled To $56,291.93 In Unpaid Overtime Wages.

Gonzalez Calderon is entitled to $56,291.93 in unpaid overtime wages.

The nature of his work was maintenance. He did the laundry, the cleaning, and went to the bank to make deposits. He served water and coffee to the clients. He put the water in place for pedicures and removed the water after pedicures.

The same analysis in Section 1.1 that applies to Lisboa for arriving at her hourly and overtime rates, applies to Gonzalez Calderon.

This chart uses Gonzalez Calderon's working hours, and issued pay stubs and the fact that there were only two different paid amounts—first $630.00 / week and then $600.00 / week:

| Period Of Employment Within 6-Year NYLL Statute of Limitations [14] | Number Of Weeks Worked | Number Of Total Weekly Hours / Number Of Overtime Hours Worked Per Week | Weekly Income Before Taxes | Hourly Rate (Total Pay / Weeks Worked / Total Weekly Hours | Overtime Rate (1.5 X Hourly Rate, Or If Hourly Rate Was Below Minimum Wage, Using 1.5 X Minimum Wage Rate) | Total Amount Owed (Number Of Weeks Worked X Weekly Overtime Hours) |
|---|---|---|---|---|---|---|
| | | | | | | |

---

[14] The original complaint filed on October 8, 2014 did not name Calderon, who was added on February 25, 2015. The original complaint, however, was a class action complaint and the default judgment, Dkt. No. 118, renders Calderon as part of that. "The filing of a class action tolls the statute of limitations for all potential class members. American Pipe & Constr. Co. v. Utah, 414 U.S. 538, 553, 94 S .Ct. 756, 38 L.Ed.2d 713 (1974); accord, e.g., Sapon v. Cherry Hill Mkt. Corp., No. 10 CV 5616, 2014 WL 4794231, at *1 (E.D.N.Y. Sept. 25, 2014). Thus, the appropriate date to start calculating Gonzalez Calderon's damages is October 8, 2008—6 years before the filing of the original complaint.

| | | | | | | |
|---|---|---|---|---|---|---|
| October 8, 2008 – December 31, 2008 (84 Days) | 12 | 66 / 26 | $630.00 | $9.55 | $14.33 | $4,470.96 |
| January 1, 2009 – December 31, 2009 | 52 | 66 / 26 | $630.00 | $9.55 | $14.33 | $19,374.16 |
| January 1, 2010 – December 31, 2010 | 50[15] | 66 / 26 | $630.00 | $9.55 | $14.33 | $18,629.00 |
| January 1, 2011 – February 5, 2011 | 5 | 66 / 26 | $630.00 | $9.55 | $14.33 | $1,862.90 |
| February 6, 2011 – April 8, 2011 | 8.71 (8 weeks, 5 days) | 66/26 | $600.00 | $9.09 | $13.64 | $3,088.91 |
| April 9, 2011 – October 1, 2011 | 25 | 66/26 | $600.00 | $9.09 | $13.64 | $8.866.00 |
| | | | | | | **$56,291.93** |

---

[15] In 2010, Calderon took two weeks of vacation. It is the only year he took vacation.

4139-2427-8824, v. 1

### 2.2. Pursuant to NYLL Sections 195(1) And 195(3), Gonzalez Calderon Is Entitled To $5,000.00 For The Failure To Provide Him The Required Wage Notices And Statements.

Pursuant to NYLL Sections 195(1) and 195(3), Gonzalez Calderon is entitled to $5,000.00 for the failure to provide him the required wage notices and statements.

Like with Lisboa, Gonzalez Calderon never received the notice and statements required by the WTPA. Like with Lisboa, Gonzalez Calderon was never provided with the notice, and its statements were flawed in that they failed to list "the rate and basis of pay." <u>Franco v. Jubilee First Ave. Corp.</u>, No. 14–CV–7729, 2016 WL 4487788, at *14, 2016 U.S. Dist. LEXIS 114191, at *43 (S.D.N.Y. Aug. 25, 2016) (citation omitted). Just like with Lisboa, Gonzalez Calderon's statements also failed to include J Sisters' "phone number," and more importantly, "the regular hourly rate or rates of pay," "the overtime rate or rates of pay," and "the number of regular hours worked and the number of overtime hours worked." <u>Schalaudek v. Chateau 20th Street LLC</u>, 16-CV-11 (WHP) (JLC), , 2017 WL 729544, *3 (S.D.N.Y. Feb. 24, 2017).

Combining the wage notice and statement failures, Gonzalez Calderon is owed $5,000.00.

### 2.3. Pursuant to the NYLL, Gonzalez Calderon Is Entitled To Emotional Distress.

Pursuant to the NYLL, Gonzalez Calderon is entitled to emotional distress damages.

### 2.4. Gonzalez Calderon Is Entitled To Liquidated Damages In The Amount Of <u>$20,722.48.</u>

Calderon is entitled to liquidated damages in the amount of **$20,722.48.** These liquidated damages are for the unpaid wages while Calderon was employed.

Calderon is entitled to liquidated damages of **$20,722.48.** This chart shows the break down, and incorporates the NYLL change in liquidated damages from 25% to 100% on April 9, 2011:

| Back-Pay Damages | 25% Rate Pre-April 9, 2011 | 100% Rate Post-April 9, 2011 | Total |
|---|---|---|---|
| Unpaid Overtime Wages | 2008:<br><br>$4,470.96 X 0.25 = $1,117.74 | $8,866.00 | $20,722.48 |
|  | 2009:<br><br>$19,374.16 X 0.25 = $4,843.54 |  |  |
|  | 2010:<br><br>$18,629.00 X 0.25 = $4,657.25 |  |  |
|  | 2011: $1,862.90 + $3,088.91 =<br><br>$4,951.81 X 0.25 = $1,237.95 |  |  |
|  | Total = $11,856.48 |  |  |

***

Thus, the total liquidated damages are **$20,722.48.**

### 2.5.   Pursuant to the NYLL, Gonzalez Calderon Is Owed Prejudgment Interest Of $37,997.05.

Gonzalez Calderon is entitled to prejudgment interest at a rate of 9% per annum.

Belizaire v. RAV Investigative and Sec. Services Ltd., 61 F.Supp.3d 336, 363-364

(S.D.N.Y. November 21, 2014).

The interest based on all of the lost back pay losses, which here are limited to the

unpaid overtime wages, is $56,291.93.

Here, it is appropriate to use the midpoint of the those back-pay damages that

are timely, October 8, 2008 (using the October 8, 2014 filing date and NYLL six-year

statute of limitations), and when his back-pay damages stopped when Calderon's

employment stopped on October 1, 2011. See Maldonado v. La Nueva Rampa, Inc., No.

10cv8195 (LLS) (JLC), 2012 WL 1669341, at *11 (S.D.N.Y. May 14,

2012) (recommending that interest be calculated from midpoint of employment period

where NYLL violations occurred throughout the course of employment).

There are 1088 days between those two dates. Half of that is 544 days. Adding

544 days to October 8, 2008 the date is April 5, 2010.

The period from April 5, 2010 to the default judgment on October 4, 2017 is

7.50 years.

Multiplying the principal of $56,291.93 by the interest rate of 9%, and by the time period of 7.50 years, the pre-judgment interest totals $37,997.05. <u>Fermin v. Las Delicias Peruanas Restaurant, Inc.</u>, 93 F.Supp.3d 19, 50 (E.D.N.Y. 2015).

The total interest amount of $37,997.05 is pursuant to C.P.L.R. § 5001, and an additional award pursuant to C.P.L.R. § 5002 is to be calculated as interest at the rate of nine percent per annum on the sum of $94,288.98 ($56,291.93 plus $37,997.05) from October 4, 2017 through the date of entry of final judgment. <u>See</u> <u>Belizaire</u>, 61 F.Supp.3d at 364 (S.D.N.Y. 2014).

### 2.6. Gonzalez Calderon Is Entitled To Post-Judgment Interest.

Gonzalez Calderon seeks post-judgment interest in the Second Amended Complaint. Dkt. No. 19, Prayer For Relief, p. 19, g. As described in Section 1.12, an award of post-judgment interest is "mandatory" and should be awarded at the statutory rate prescribed by Section 1961.

### 2.7. Attorneys' Fees And Costs Should Be Awarded.

Like for Lisboa, if Gonzalez Calderon prevails, attorneys' fees and costs should be awarded. <u>See</u> <u>Pineda v. Masonry Const., Inc.</u>, 831 F.Supp.2d 666 (S.D.N.Y. November 15, 2011).

**xii.    A statement as to whether the parties consent to less than a unanimous verdict:**

The Parties do not consent to less than a unanimous verdict.

Dated:October 16, 2020

4139-2427-8824, v. 1

_____

Andrea M. Paparella
Law Office of Andrea Paparella, PLLC

Current Mailing Address:

4 Dunlap Street
Salem, MA  01970
Telephone: (617) 680-2400
Facsimile: (914) 462-3287


*Attorney for Plaintiffs*

_____

T. Edward Williams
Williams, LLP
7 World Trade Center
250 Greenwich Street, 46th Floor
New York, NY  10007
Telephone: (212) 634-9106
Facsimile: (212) 202-6228
Email: Edward.williams@wmsintl.com
Email: amp@andreapaparella.com
*Attorney for Defendant, Santos*

4139-2427-8824, v. 1